IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROXIE GRANVILLE and
LISA WASHINGTON,

        Plaintiffs,

  v.

THE CITY OF PORTLAND,

        Defendant.

Civil No. 02-1016-HA   LEAD
          04-1295-HA

OPINION AND
ORDER

---

Daniel Snyder
Sara Thistlewaite
Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
    Attorneys for Plaintiffs

Jenifer Johnson
Amy R. Alpern
Patrician Ann Haim
Amburgey & Rubin, P.C.
1750 S.W. Harbor Way, Suite 450
Portland, Oregon 97201
    Attorneys for Defendant

HAGGERTY, Chief Judge:

OPINION AND ORDER- 1

In July 2002, plaintiffs Lisa Washington and Roxie Granville filed a complaint against their employer, the City of Portland (the City), alleging race and gender discrimination and violations of free speech and association. *See* CV 02-1016-HA. On August 18, 2004, the court granted in part and denied in part defendant's motion for summary judgment and dismissed plaintiffs' claims for violations of free speech and association. On September 13, 2004, plaintiff Washington filed a complaint in CV 04-1295-HU based on allegations of continuing discrimination and retaliation. On December 6, 2004, the court consolidated these cases. On April 5, 2005, defendant filed a second summary judgment motion against plaintiff Washington, which is currently before the court. Oral argument was heard on May 9, 2005. For the following reasons, the court denies the motion.

**FACTUAL BACKGROUND**

Plaintiff Lisa Washington began working for the City in 1991. In February 1997, she became a Code Specialist II in the Office of Planning and Development, now known as the Bureau of Development Services (BDS). Plaintiff reported to Paul Scarlett (Scarlett), Code Compliance Section Supervisor, from May 2001 until April 2004. Scarlett reported to Ann Kohler (Kohler), Site Services Manager of BDS, and Kohler reported to the Director of BDS.

On July 8, 2002, plaintiff's physician, Dr. Cynthia Bartley, diagnosed plaintiff with panic disorder. Plaintiff began a medical leave of absence that day. On July 30, 2002, plaintiff and Roxie Granville jointly filed a race and gender discrimination lawsuit against the City. On August 16, 2002, Scarlett signed the employer section on Washington's workers' compensation claim form.

The City has a policy requiring employees to submit medical certificates authorizing

them to return to work following leaves of absences. While on leave, plaintiff submitted several medical certificates to the City concerning her status. A certificate dated December 10, 2002, reads that plaintiff "may return to work on 1/31/03 possibly." Affidavit of Denise Kleim (Kleim Aff.), Ex. 6 at 2. A certificate sent on May 19, 2003, reads that plaintiff "may return to work on 8/30/03 possibly." *Id.* at 3. On June 17, 2003, plaintiff submitted a certificate that stated that plaintiff could return to work immediately as long as it was within a different department and not under the supervision of Scarlett. Defendant did not respond to this request. Another certificate sent on September 3, 2003, reads that plaintiff "may return to work on 10/30/2003 possibly." *Id.* at 4. A final certificate sent on November 21, 2003, reads that plaintiff was "unable to work from 6/5/2002 to 12/30/2003 possibly and is able to return to work on 12/31/2003 possibly." Kleim Aff., Ex. 6 at 6.

In May and October 2003, respectively, plaintiff sent the City two Leave of Absence forms, signed by plaintiff, which read, "I understand that in case of my own serious health condition, I may not be permitted to resume my position with the City until I provide a completed Return to Work Release Form." Kleim Aff., Exs. 4, 5.

Plaintiff returned to work on December 31, 2003. She provided the November 18, 2003 certificate to Kohler, who discussed it with Kleim and Scarlett. They determined that the certificate was insufficient to allow plaintiff to return to work. Kohler informed plaintiff that her work release form was inadequate, and that she needed to obtain another release that identified any work restrictions placed on plaintiff. Plaintiff called her doctor, but was unable to obtain a new release without scheduling an appointment. Kohler determined that plaintiff needed to leave work and not return until she obtained a new medical release.

OPINION AND ORDER- 3

Plaintiff obtained a new release on January 14, 2004, which provided that she was able to return to work without restriction. The next day, plaintiff returned to work as a Code Specialist II. She was not paid between January 1 and January 14, 2004. On January 22, 2004, Scarlett advised plaintiff that she was not allowed to perform certified inspections in the field, but was allowed to conduct code compliance hearings.

In April 2004, per her request, plaintiff was transferred to another Code Specialist II position in a different division. Plaintiff asserts that she made this request because she did not want to work under Scarlett.

## STANDARDS

**1.  Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if factual material exists for trial. *Lindahl v. Air France*, 930 F.2d 1434, 1436 (9th Cir. 1991).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. Assuming there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and (3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When different ultimate inferences can be reached, summary judgment is inappropriate. *O'Connor v. Boeing N. Am., Inc.,* 311 F.3d 1139, 1150 (9th Cir. 2002).

The issue of material fact required by Rule 56 to entitle a party to proceed to trial does not need conclusive resolution in favor of the party asserting its existence. All that is required is sufficient evidence supporting the claimed factual dispute to require a trier of fact to resolve the parties' differing versions of the truth at trial. At the summary judgment stage, the judge does not weigh conflicting evidence or decide credibility. Those determinations are the province of the factfinder at trial. *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996) (on a motion for summary judgment, the court does not weigh the evidence or determine the truth of the matter asserted, but decides only whether there is a genuine issue for trial).

Moreover, in a Title VII employment discrimination suit, since "the ultimate question [of discrimination] is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by a factfinder, upon a full record," a plaintiff need produce very minimal evidence in order to overcome a motion for summary judgment. *Chuang v. Univ. of California, Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410 (9th Cir. 1996)).

## 2. Title VII Claims and State Discrimination and Retaliation Claims

Title VII prohibits employment discrimination based upon "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Pursuant to 42 U.S.C. § 1983, a plaintiff may challenge action committed under color of state law that amounts to a deprivation of constitutional or statutory rights. *See Smith v. Barton*, 914 F.2d 1330, 1333 (9th Cir. 1990). To prove discrimination in violation of 42 U.S.C. § 1983, a plaintiff must prove that the defendant acted with the intent to discriminate. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000).

The *prima facie* test for disparate treatment under O.R.S. 659A.030 is the same as the *prima facie* test required for a claim under Title VII. *Cf.* O.R.S. 659A.030 and 42 U.S.C. § 2000e-2; *Henderson v. Jantzen, Inc.*, 719 P.2d 1322, 1324 (Or. 1986) (expressly adopting the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), *prima facie* case requirements for O.R.S. Chapter 659 claims).

Under *McDonnell Douglas*, to present a *prima facie* case of discrimination under Title VII, a plaintiff must present sufficient evidence that gives rise to an inference of unlawful discrimination. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998). One way a plaintiff may establish an inference of discrimination is by meeting the four requirements articulated in *McDonnell Douglas*: that plaintiff (1) belongs to a protected class; (2) was performing his or her job satisfactorily; (3) was terminated, rejected for employment, or otherwise subjected to a tangible employment action; and (4) and that this took place under circumstances giving rise to an inference of unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 804; *see also O'Conner v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13

(1996).

This four part test is neither exclusive nor rigid and its satisfaction depends on the facts of each case. The Supreme Court noted in *McDonnell Douglas* that because of the variations in factual situations, plaintiffs in some cases may establish a *prima facie* case by other means as well. *McDonnell Douglas*, 411 U.S. at 802 n.13. Compliance with the *McDonnell Douglas* standard is only one method of establishing a *prima facie* case. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977); *Gay v. Waiters' & Dairy Lunchmen's Union*, 694 F.2d 531, 550 (9th Cir. 1982) ("We have repeatedly emphasized that proof of the four *McDonnell Douglas* criteria is not the only way to establish a prima facie case of disparate treatment, and that the *McDonnell Douglas* approach is to be applied flexibly."); *Lynn v. Regents of the Univ. of California*, 656 F.2d 1337, 1341 (9th Cir. 1981). A plaintiff may seek to demonstrate an inference of discrimination in whatever manner is appropriate under the particular circumstances. *See Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 n.12 (1st Cir. 1979).

The burden of establishing a *prima facie* case is not onerous. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). At the summary judgment stage, the plaintiff need only present "minimal" proof that "does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). A plaintiff need only provide evidence that suggests that the employer's decision was based on a discriminatory motive that is illegal under the Civil Rights Act. *Teamsters*, 431 U.S. at 358.

If a plaintiff succeeds in proving the *prima facie* case, there is a presumption that the employer unlawfully discriminated against the plaintiff, and the burden of production shifts to the defendant employer to provide some legitimate, nondiscriminatory reason for the adverse

employment action. *Burdine*, 450 U.S. at 256. If the defendant carries this burden, the plaintiff has the opportunity to prove by a preponderance of the evidence that the legitimate reasons proffered by the defendant were merely pretextual. *McDonnell Douglas*, 411 U.S. at 804; *Yartzoff v. Thomas*, 809 F.2d 1371, 1373-74 (9th Cir. 1987). A plaintiff can avoid summary judgment by producing evidence that raises a genuine issue of material fact regarding the truth of the employer's proffered explanation. *Chuang*, 225 F.3d at 1127. This can be done either directly by persuading the court that a discriminatory motive more likely provoked the employer's action, or indirectly by showing that the employer's explanation is not credible. *Burdine*, 450 U.S. at 256.

To make out a *prima facie* case of retaliation under Title VII, the plaintiff must show that he or she engaged in a protected activity, suffered an adverse employment action, and there was a causal link between the protected activity and the adverse employment action. *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004) (citations omitted). For the purpose of a retaliation claim, an adverse employment action is one that "is reasonably likely to deter employees from engaging in protected activity." *Id.* (quoting *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)).

**3.     Equal Protection and Section 1983**

To state a claim for damages arising from an alleged constitutional violation under 42 U.S.C. § 1983, a plaintiff must allege (1) that the defendant, a "person," acted under color of state law, (2) to deprive the plaintiff of federal constitutional or legal rights. *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) (citation omitted).

There is no vicarious liability under Section 1983. *Bd. of County Comm'rs of Bryan*

*County v. Brown*, 520 U.S. 397, 403 (1997). Rather, to establish municipal liability under Section 1983, the plaintiff must identify a custom, practice, or policy that cause his or her injury. *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978). This can be established through any one of the following theories: (1) that a city employee was acting pursuant to an expressly adopted official policy; (2) that a city employee was acting pursuant to a longstanding practice or custom; (3) that the individual who committed the wrong had final decision-making authority; or (4) that someone with final decision-making authority ratified a subordinate's action and its basis. *Lytle v. Carl*, 382 F.3d 978, 982, 987 (9th Cir. 2004).

To sustain a claim for denial of equal protection, the plaintiff must prove that the defendant, a state actor, acted in a discriminatory manner toward the plaintiff because of his or her sex or race, and that the discrimination was intentional. *Bator v. State of Hawaii*, 39 F.3d 1021, 1028-29 (9th Cir. 1994). Discriminatory intent may be proved by direct or indirect evidence. *Id.* For purposes of municipal liability under Section 1983, to state a claim for a violation of the Equal Protection Clause, the "plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted). Where the plaintiff challenges a facially neutral governmental policy, practice, or custom, to prove disproportionate impact, the plaintiff must further show that "some invidious or discriminatory purpose underlies the policy." *Id.* (citations omitted).

4. **Americans with Disabilities Act**

The ADA prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability. Specifically, it provides that no covered

OPINION AND ORDER- 9

employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The ADA definition of discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "Reasonable accommodation" means that, in certain instances, employers must make special adjustments to their policies for individuals with disabilities. 29 C.F.R. § 1630.2(o)(1)(ii) ("reasonable accommodation" includes "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the person held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position . . . .").

An employer's obligation to engage in an interactive process with the employee to find a reasonable accommodation "is triggered by an employee or employee's representative giving notice of the employee's disability and the desire for accommodation." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc). "An employee is not required to use any particular language when requesting an accommodation but need only inform the employer of

the need for an adjustment due to a medical condition." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (internal quotations and citation omitted). Once the employee has provided notice to the employer of the request for an accommodation, the employer must communicate directly with the employee and explore in good faith the employee's request. *Id.* "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process." *Id.* (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996).

## ANALYSIS

Plaintiff Washington brings five claims against the City: (1) retaliation under Title VII; (2) equal protection violations under Section 1983; (3) unlawful discrimination under O.R.S. 659A.030; (4) violations of the Americans With Disabilities Act; and (5) workers' compensation discrimination. Plaintiff asserts that the City began discriminating against her because she filed complaints against it. She contends that her claims of gender, race, and disability discrimination and retaliation are based on the same alleged conduct, to wit, that she was asked to leave work on December 31, 2003, without compensation until a later pay period, and was not allowed to return to work until January 15, 2004. The alleged conduct also includes the City's advisement that plaintiff's work would include code compliance hearings but that she would not be permitted to perform certified inspections in the field.

### Retaliation under Title VII

Plaintiff does not dispute that the City has a policy regarding employees returning to work after a medical leave of absence, and that such employees must furnish to the City a doctor's certificate authorizing that employee to return to work and listing any applicable work

OPINION AND ORDER- 11

restrictions. However, plaintiff argues that the City's policy does not set forth what an acceptable certificate is, and that defendant selectively refused to find that plaintiff's November 18, 2003 release was sufficient to allow her to return to work. This caused her to be unable to furnish an adequate medical release until January 14, 2004, and return to work until January 15, 2004. The court finds that, under the Ninth Circuit's expansive definition of adverse employment action, the City's refusal to allow plaintiff to return to work until she furnished a new work release is an adverse employment action.

Plaintiff next argues that the modification of her job duties, namely, removing her from certified field inspections and restricting her work to code compliance hearings, was an adverse employment action. Again, under the expansive definition of adverse employment action, the court is persuaded that this, too, is an adverse employment action. Accordingly, the court finds that plaintiff has presented a question of fact as to whether defendant's actions were motivated because of plaintiff's complaints against the City and the initial lawsuit.

**Equal Protection Violations under Section 1983**

Plaintiff asserts that the City violated her equal protection rights when Kohler told plaintiff that she wanted a more detailed work release from her doctor. Plaintiff further asserts that the City violated her equal protection rights when Scarlett, her immediate supervisor, took away some of her job duties, including the responsibility of doing certified site inspections.

As explained above, the City has a policy regarding employees returning to work after a medical leave of absence that such employees must furnish to the City a doctor's certificate authorizing that employee to return to work and listing any applicable work restrictions. Facially, this policy does not discriminate based on race, gender, or disability. Thus, in order to

sustain her claim for violation of the Equal Protection Clause under Section 1983, plaintiff must show that there was a discriminatory and invidious purpose that motivated the policy. *See Lee*, 250 F.3d at 686.

The City argues that Kleim, Kohler, and Scarlett had legitimate, nondiscriminatory reasons for not accepting plaintiff's November 18, 2003 certificate, which indicated that plaintiff would "possibly" be able to return to work on December 31, 2003. Plaintiff had previously provided the City several notes that also indicated that she would "possibly" be able to return on specific dates, none on which plaintiff actually returned to work.

Plaintiff asserts that, despite the previous certificates, the City should have known that the November 18, 2003 release was different than the prior releases because it was titled "Certificate to Return to Work" and stated that she "is able" to return to work on December 31, 2003. If the City was confused as to the import of this release, plaintiff asserts that it should have contacted plaintiff or her physician, or conducted an independent medical examination.

With respect to the modification of plaintiff's job duties, plaintiff contends that while she was on medical leave, Ward Curtis (Curtis), a Caucasian male, took over some of plaintiff's duties, including performing certified field inspections. Upon her return, plaintiff's job duties were modified to exclude any certified field work, while Curtis continued performing field work. When plaintiff asked Scarlett why she was not being allowed to go into the field, Scarlett responded that it was because she was not certified. Yet, plaintiff asserts that Curtis also was not certified for field work.

Under a different set of circumstances, the court may be inclined to find that plaintiff has failed to produce evidence of a custom, practice, or policy to discriminate against plaintiff on

some unlawful basis. However, given the background of this particular case, and the attendant allegations of sex and race discrimination, the court finds that plaintiff has presented a question of fact as to whether the City treated plaintiff differently with respect to the medical release and the modification of her job duties such that summary judgment is inappropriate.

### Discrimination under O.R.S. 659A.030

There is no dispute that plaintiff, an African-American woman, is a member of a protected class or that she was performing her job satisfactorily. As explained above, the court finds that plaintiff was subjected to tangible employment actions as of December 31, 2003. Thus, the question before the court is whether these actions took place under circumstances giving rise to an inference of unlawful discrimination.

The City argues that it had a legitimate, nondiscriminatory reason for requiring employees to furnish a completed medical release prior to returning to work, and for modifying plaintiff's job duties to exclude field work until she was certified to perform such work. Under *McDonnell-Douglas*, the burden returns to plaintiff to show that defendant's explanations are merely pretextual. For the reasons provided above, the court finds that plaintiff has presented genuine factual issues regarding a possible discriminatory motive on defendant's part, thereby precluding summary judgment.

### Americans With Disabilities Act

The parties appear to agree that plaintiff suffers from a panic disorder and is a "qualified individual" under the ADA. Plaintiff argues that in June 2003, she notified the City of her request for a reasonable accommodation when she submitted a medical certificate that stated that she could immediately return to work if she were placed under a different supervisor. The City

did not respond to the request. Under *Barnett* and *Zivkovic*, plaintiff has presented a question of fact as to whether the City failed to engage in the interactive process, and therefore, failed to reasonably accommodate plaintiff's disability. Summary judgment is denied.

**Workers' Compensation Retaliation**

Under Oregon law, it is unlawful for an employer to discriminate against an employee with respect to any term or condition of employment because that employee has applied for workers' compensation benefits. O.R.S. 659A.040.

Plaintiff filed a workers' compensation claim in August 2002. Plaintiff's retaliation claim is based on the City's actions in December 2003 and thereafter when it refused to accept her medical release and then modified her job duties when she returned to work. Although there is a 15-month lapse between the filing of the workers' compensation form and the first allegation of retaliation, the court is required to draw all reasonable inferences in favor of plaintiff. *See Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 929 (9th Cir. 2004) (recognizing that the Ninth Circuit has declined to hold that any time period is *per se* too long to support a retaliation claim because "there are a variety of reasons why retaliators choose to wait before acting"); *see also Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002) (an eleven-month gap is within the time range that has been found to support an inference of retaliatory conduct). Based on the surrounding circumstances, plaintiff has presented sufficient evidence to defeat summary judgment.

//

//

//

**CONCLUSION**

Defendant's Motion for Summary Judgment (CV 02-1016-HA, Doc. #177; CV 04-1295-HA, Doc. #30) is DENIED.

IT IS SO ORDERED.

Dated this  10   day of May, 2005.

                                                        /s/Ancer L.Haggerty
                                                           Ancer L. Haggerty
                                                United States District Judge